UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| TINA GAIL STRICKLAND, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 2:14-CV-244-RLJ-MCLC |
| ) | |
| ERIC QUALLS, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This is a pro se prisoner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 2]. Respondent filed a response in opposition thereto, as well as a copy of the state record [Docs. 8 and 9]. Petitioner has not filed a reply to Respondent's response and the time for doing so has passed. See E.D. Tenn. L.R. 7.1. For the reasons set forth below, Petitioner's § 2254 petition [Doc. 2] will be **DENIED** and this action will be **DISMISSED**.

### I. PROCEDURAL HISTORY

On June 21, 2010, Petitioner pleaded guilty to vehicular homicide without a sentencing agreement. The trial court sentenced Petitioner to twelve years in the Tennessee Department of Corrections on September 24, 2010. No appeal was taken by Petitioner. On May 23, 2011, Petitioner filed a petition for state post-conviction relief arguing that that the trial court erred by finding that her guilty plea was knowingly, voluntarily, and intelligently entered because she received the ineffective assistance of counsel. On December 19, 2011, Petitioner filed an amended post-conviction petition with the assistance of counsel. Following an evidentiary hearing, the post-conviction court denied the petition on April 4, 2013. On May 6, 2013, Petitioner filed a timely notice of appeal; however, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the post-

conviction court's denial of relief. On June 23, 2014, the Tennessee Supreme Court denied Petitioner's application for permission to appeal.

## II. BACKGROUND

The following factual background is taken from the TCCA's opinion on appeal of Petitioner's petition for post-conviction relief:

> The record shows that at the guilty plea hearing on June 21, 2010, the trial court reviewed with the Petitioner the charges against her and confirmed that she was pleading guilty to vehicular homicide without a sentencing agreement. The court stated that she faced possible punishment of eight to twelve years. The Petitioner responded that she understood the plea agreement. She told the court that counsel reviewed the plea agreement with her and that she signed the agreement because she was guilty of vehicular homicide. She denied consuming alcohol, narcotics, drugs, medications, or mind-altering substances that might affect her ability to understand what was happening in court. She admitted, though, that she took muscle relaxers, vitamins, and iron supplements and used a breathing inhaler. The Petitioner passed routine drug screens when she was released on bond. The court advised the Petitioner that by pleading guilty she gave up the rights to have a jury trial, to cross-examine witnesses, to subpoena witnesses to testify on her behalf, and to testify on her own behalf. She denied that she was forced, threatened, or promised anything in exchange for her pleading guilty and said that her plea was voluntary and of her own free will. She said she was pleased with counsel's representation.
>
> The trial court requested that the Petitioner state how the offense occurred. She said, "I really don't remember the accident, but I know I was drinking [.]" The last thing she remembered was standing on Connie Whitehead's porch. Although she had no memory of the accident, she agreed she killed someone while driving her car. The victim was ninety-one years old at the time of the accident. The Petitioner did not appeal her sentence but now seeks post-conviction relief.
>
> At the post-conviction hearing, the Petitioner testified that counsel failed to advise her properly about the possible sentence she faced. She said counsel told her that the maximum sentence was eight years, although the trial court sentenced her to twelve years. She said that counsel advised her that pleading guilty was in her best interest but that after she pleaded guilty, counsel wrote her a letter stating

that the maximum sentence was twelve years. A copy of the July 10, 2010 letter was received as an exhibit. In the letter, counsel stated,

> I am writing to review our discussion on sentencing and to correct one thing we discussed. When we were talking about the maximum amount of jail time Judge Cupp could give you, I told you 8 years. I was using the bottom of the range, which is our usual agreement with the State. In your case, as you recall, we don't have such an agreement. Therefore, Judge Cupp could give you any sentence within the range, which is 8–12 years.

Counsel also discussed in the letter the possibility of probation if the trial court sentenced her to ten years or less. Counsel also advised that at least one enhancement factor applied, which provided the court with the authority to increase her sentence from the minimum sentence.

The Petitioner testified that she and counsel never discussed a sentence higher than eight years. She admitted, though, that the trial court questioned her at the guilty plea hearing about her knowledge of the sentencing range. She said that she understood the sentencing range and that she faced a maximum sentence of twelve years after the court told her at the guilty plea hearing.

The Petitioner testified that she would not have pleaded guilty had she known she would receive more than eight years. She said that although she learned at the guilty plea hearing that she faced a twelve-year sentence, she entered a guilty plea because she had "already signed the paper before court started." She denied knowing she could have told the trial court that she did not know she might receive a sentence above eight years. She believed she could not change her mind about entering a guilty plea after she signed the "paperwork."

On cross-examination, the Petitioner testified that she met with counsel at least twice before entering her guilty plea but that she did not recall scheduling appointments. She said her fiancé and her mother attended some of the meetings. She agreed counsel told her the blood analysis showed that her blood alcohol content was 0.22 at the time of the accident. She said she did not recall much about the accident and did not think she drank alcohol that day. She said she pleaded guilty because she was told it was in her best interest to plead guilty and because she did not understand "any of this." She

agreed she told the trial court at the guilty plea hearing that she was pleading guilty because she was guilty of vehicular homicide.

The Petitioner testified that although counsel told her the maximum sentence was eight years, the trial court told her at the guilty plea hearing that no agreement existed regarding the sentence and that the court would determine the sentence after a sentencing hearing. She agreed the court advised her of her rights and said she understood those rights. She agreed that the court told her to interrupt if she did not understand something and that she did not interrupt.

The Petitioner testified that she did not know "anything about the . . . legal situation" when asked if she wanted a trial. She agreed she did not have a guaranteed sentence but said counsel told her the sentence would be eight years or less.

Upon questioning by the trial court, the Petitioner testified that she did not recall if she met with counsel or if she told counsel that she did not understand she could be sentenced to twelve years. She agreed, though, she told counsel after she pleaded guilty that she was upset about an article in the newspaper that falsely stated marijuana use was involved in the accident.

Counsel testified that she had practiced law for almost twenty-nine years and that her representation of the Petitioner began at the arraignment in criminal court. She said the Petitioner always claimed that she had little memory of the day of the accident and that she was not drinking alcohol, although she recalled drinking water from a mason jar. She said the Petitioner recalled arguing with a woman whose house she had left at the time of the accident. Counsel interviewed people who were with the Petitioner just before the accident. They told her that the Petitioner arrived at Connie Whitehead's house earlier that day and had been drinking before she arrived. Counsel learned that the Petitioner wanted to leave the house to run a few errands and that an argument began between the Petitioner and Ms. Whitehead. They attempted to prevent the Petitioner from driving because she was "clearly intoxicated" by that time, but the Petitioner refused to stay and hit a mailbox with her car as she drove away. Counsel thought the evidence against the Petitioner was overwhelming.

Counsel testified that she reviewed the eight-to-twelve year sentencing range with the Petitioner on June 18, 2010, before the guilty plea hearing. She said she wrote the letter previously received as an exhibit because when she met with the Petitioner and her

family, she emphasized eight years. She said she believed eight years was probably the maximum sentence the trial court would impose based on her experience. She denied telling the Petitioner that eight years was the maximum sentence she might receive. She said she discussed with the Petitioner and her family at the meeting the potential sentencing outcomes, including probation, community corrections, and split confinement. She admitted that she did not think the court would impose the maximum sentence and that she did not discuss a possible twelve-year sentence as much as she should have. She said she wrote the letter to ensure the Petitioner understood the possible sentence was eight to twelve years. She denied that the Petitioner contacted her after receiving the letter to express her misunderstanding of the possible punishment. She said that had the Petitioner contacted her, she would have requested that the court set aside the guilty plea.

Counsel testified that the State did not offer to negotiate a plea agreement and that the Petitioner's case was the first open-ended guilty plea in which she had participated. She and the Petitioner discussed the significance of the trial court's determining the sentence. She told the Petitioner that it was the Petitioner's decision whether to plead guilty, that the evidence against her was overwhelming, and that counsel thought she would be convicted at a trial. She said the Petitioner decided to plead guilty after discussing it with her family. She said the Petitioner did not want a trial.

Counsel testified that the Petitioner pleaded guilty on June 21, 2010, and that after the Petitioner entered her guilty plea but before the sentencing hearing, an article appeared in the local newspaper reporting that the Petitioner was under the influence of marijuana at the time of the accident. She said the Petitioner left a message asking her to request a retraction from the newspaper. She called the newspaper, and a retraction was printed. She said the Petitioner was drunk and angry when she left the message. She said the Petitioner called a few days afterward and apologized for the message. She denied that the Petitioner addressed the possible twelve-year sentence in the message.

On cross-examination, counsel testified that she always talked to her clients "in terms of ranges" because of the nature of the sentencing statutes and that it was unproductive to tell a client the maximum sentence. She knew she discussed the sentencing range with the Petitioner. She said she noted on the indictment that the sentencing range was eight to twelve years for a Range I, standard offender. Counsel testified that she believed the trial court would sentence the Petitioner from eight to ten years based on the Petitioner's lack of

5

previous felony convictions, "life issues," health problems, admission of guilt, and the lack of significant enhancement factors. She said that although she discussed the sentencing range, she probably overemphasized eight years.

The trial court denied relief. The court credited counsel's testimony that she did not advise the Petitioner that she would receive the minimum, eight-year sentence after pleading guilty. The court found that counsel and the Petitioner discussed the possible sentencing outcomes and that counsel's letter was "nothing more than a review" of the previous discussion to ensure the Petitioner understood. The court found that the Petitioner was not misled into pleading guilty and that the Petitioner never told counsel she did not understand the possible sentencing outcomes after the court sentenced her to twelve years.

The trial court noted the exchange between the Petitioner and the court during the guilty plea hearing. It found the Petitioner was told that the court would determine her sentence, that the sentence would be between eight and twelve years, and that the court provided the Petitioner opportunities to ask questions about things she did not understand. The court discredited the Petitioner's testimony that she did not think she could change her mind because she had already signed the plea agreement. The court found that the Petitioner failed to establish that counsel provided deficient performance or that she was prejudiced. . .

*Strickland v. State*, No. E2013-01118-CCA-R3-PC, 2014 WL at 605442 *1–4 (Tenn. Crim. App. Feb. 14, 2012), *perm App. Denied* (Tenn. June 23, 2014).

## II.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq*., a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)–(2).

6

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Further, where findings of fact are supported by the record, they are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

Petitioner's § 2254 habeas corpus petition [Doc. 2] raises only one ground for relief. Petitioner claims that her guilty plea was not entered into knowingly and voluntarily [Doc. 2 p. 5]. Specifically, Petitioner argues that she entered her plea of guilty based upon the mistaken understanding that the highest sentence she could receive was an eight year sentence, when in fact, she was facing a sentence of anywhere between eight to twelve years [*Id.*].

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

7

*Strickland*, 466 U.S. at 687. Petitioner has the burden of showing both deficient performance and prejudice. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Review of a *Strickland* claim under § 2254(d)(1) is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

This standard applies during the plea-negotiation process. *See*, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[T]he voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."). Failing to advise a client of factors that could negate the benefit of a guilty plea may render the plea involuntary. *See*, *Miller v. Straub*, 299 F.3d 570, 580–81 (6th Cir. 2002).

Here, Petitioner asserts that her guilty plea was not entered into knowingly and voluntarily [Doc. 2 at 5]. She claims that her plea was rendered involuntary by the ineffective assistance of her trial counsel's failure to advise her of the full range of punishment [*Id*.]. Respondent argues that Petitioner's claim should be dismissed because the T.C.C.A.'s rejection of the claim was not contrary to and did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings [Doc. 9 p. 10].

The law is clear that a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25. 31 (1970); *see also State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977). To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, including the relative intelligence of the defendant; the degree of her familiarity with criminal proceedings; whether she was represented by competent counsel and had the opportunity to confer with counsel about the options available to her; the extent of advice from counsel and the court concerning the charges against her; and the reasons for her decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. *Blankenship v. State*, 585 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his or her plea is knowingly and voluntary creates a formidable barrier in any subsequent collateral

proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

As set forth above, the state post-conviction court held a hearing on the claim at which both Petitioner and her attorney testified as to their recollections of counsel's discussions with Petitioner regarding her plea agreement and sentencing range. The TCCA concluded that Petitioner knowingly, voluntarily, and intelligently entered her guilty plea and that she had failed to show her counsel was deficient or she was prejudiced by her performance.

> We conclude that the Petitioner knowingly, voluntarily, and intelligently entered her guilty plea. The record shows that the trial court told the Petitioner that because no agreement existed regarding sentencing, she faced a possible sentence of eight to twelve years. The Petitioner responded that she understood the plea agreement, that she and counsel reviewed the plea agreement, that she signed the agreement because she was guilty of vehicular homicide, and that she understood what was happening in court. She said she was not under the influence of any substances that might affect her ability to comprehend the substance of the plea agreement or appreciate the consequences of entering a guilty plea.

*Strickland*, 2014 WL at 605442, at *5.

It is apparent from the post-conviction court's memorandum findings on this claim that the court "discredited Petitioner's testimony that counsel advised her that the maximum sentence was eight years" and accredited Counsel's post-conviction testimony in which she repeatedly testified that she told Petitioner she faced a sentence between eight and twelve years if she entered a guilty plea. [Doc. 9 p. 10].

> Counsel testified that she did not advise the Petitioner the sentence would be eight years. Rather, counsel discussed with the Petitioner the possible sentencing outcomes, although counsel admitted she focused on an eight-year sentence as the likely outcome. The record fails to show, though, that counsel told the Petitioner she would receive an eight-year sentence after pleading guilty. Because counsel wanted to ensure that the Petitioner understood the possible sentencing outcome, she wrote the Petitioner a letter detailing the

10

> potential outcomes at the sentencing hearing. In the letter, counsel clarified that an eight-year sentence for a similar offense was the usual sentence based on her experience but that the trial court could sentence her between eight and twelve years. Furthermore, no evidence exists showing that the Petitioner contacted counsel to express any misunderstanding regarding the possible sentence after the letter was sent to the Petitioner. The evidence does not preponderate against the trial court's findings. The Petitioner failed to show that counsel provided deficient performance or that she was prejudiced by counsel's performance. The Petitioner is not entitled to relief.

*Strickland*, 2014 WL 605442, at *5.

The state trial court's proper colloquy can be said to have cured any misunderstanding Petitioner may have had about the consequences of her plea. *See*, *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied,* 510 U.S. 1099 (1994) (the trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea"); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2nd Cir. 1992) (the trial court's "clear and thorough plea allocution" apprising the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*). Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement cannot constitute a constitutional error when the court conducts a proper, clear, and thorough plea colloquy. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). It was reasonable for the state court to conclude that Petitioner was bound by her open-court declaration that she understood her sentence could be eight to twelve years after the presiding judge explained the range of punishment to her.

Based upon the foregoing, the Court concludes that the state courts' determination that Petitioner received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland*. Petitioner is not entitled to relief on her claim of ineffective assistance of counsel.

## IV.  CONCLUSION

The petition for habeas corpus relief will be **DENIED** and this action will be **DISMISSED WITH PREJUDICE.**

## V.  CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a Certificate of Appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

After reviewing Petitioner's claim, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a COA **SHALL NOT ISSUE**.

**AN APPROPRIATE ORDER WILL ENTER.**

ENTER:

    s/Leon Jordan    
United States District Judge